HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DION MARTIN,

    Petitioner,

    v.

UNITED STATES OF AMERICA,

    Respondent.

CASE NO. 15-CV-5428RBL
         13-CR-5570RBL

ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS

DKT. ## 9 AND 31

THIS MATTER is before the Court on Petitioner Dion Martin's second amended petition for Writ of Habeas Corpus under 28 U.S.C. § 2255. [Dkt. #31]. Martin pleaded guilty to conspiracy to distribute oxycodone in 2014. He claims ineffective assistance of counsel, alleging his court-appointed attorney deceived him into signing a plea agreement that was not what he believed, and ineffectively advocated for him at sentencing. He also claims she failed to object to the government's alleged late delivery of his presentencing report, as well as to negative information within the report.

The government argues that Martin's counsel was effective and that, even if there were deficiencies, he was not prejudiced. Martin also brings a claim under 28 U.S.C. § 2241, alleging

that he is not receiving adequate medical care in prison. Finally, he asks this Court to reevaluate his sentence based upon his age and health.

## FACTUAL BACKGROUND

From 2012–13, Martin and his cousin, Morocco Martin, engaged in an oxycodone distribution scheme. Morocco, a California resident, sent oxycodone pills to Martin in Tacoma, where he distributed them. Law enforcement arrested Martin in September 2013 while the men drove a rental car from California to Washington in possession of approximately 7,500 oxycodone pills and over $2,500.00 in cash. The government charged Martin with conspiracy to distribute oxycodone and with possession with the intent to distribute oxycodone.

In January 2014, Martin entered into a plea agreement. He agreed to plead guilty to the conspiracy charge if the government dismissed his possession with the intent to distribute charge. He also agreed to a recommended 72–96 month sentence and waived certain rights to appeal his sentence if the Court imposed a term within or below the sentencing guideline range. Martin retained the right to raise ineffective assistance of counsel claims.

At Martin's plea hearing, Magistrate Judge J. Richard Creatura repeatedly asked him if he understood the terms of his agreement. Martin confirmed that he did, including that the sentencing judge was not required to abide by the agreement's recommendations. Martin did not ask his lawyer, Linda Sullivan, any questions. Sullivan told the Court she believed Martin understood the deal and that he had approximately a week to review it while in detention. Martin told the court that he felt Sullivan effectively represented him. The Court accepted Martin's guilty plea as knowing, intelligent, and voluntary. Dkt. #24-1, p.27, 8–9.

Before Martin was sentenced, however, the United States Sentencing Commission amended its drug sentencing guidelines. The government notified Martin's counsel that it would not object to a two-level downward variance on his total offense level, reducing his

1  recommended sentencing range by a year, to 60–84 months. Thereafter, the government and
2  Martin, respectively, recommended 78 and 60 months of incarceration. This Court sentenced
3  Martin to 78 months.

4        Martin timely brought this petition [Dkt. #1] seeking habeas corpus relief. He has
5  amended it twice since filing: first to correct procedural errors [Dkt. #9], and second to restate
6  his claims with an accompanying affidavit [Dkt. #31].

7        Martin's §2255 claim for relief stems from allegations that Sullivan deceived him into
8  signing his present plea agreement and failed to effectively advocate for him at sentencing.
9  Martin claims that he initially signed a binding 84-month plea agreement, which was then
10 replaced by the non-binding, recommended 72–96 month agreement that he signed and orally
11 affirmed at his plea hearing. He asks this Court to hold an evidentiary hearing to determine the
12 veracity of his claims and argues that, if the government cannot produce a signed agreement
13 describing a recommended 72–96 month sentencing range, he should be exonerated and have his
14 sentenced reversed. He further contends the government violated his due process rights by failing
15 to deliver his presentencing report 35 days prior to his hearing. The government argues that
16 Martin's claims are meritless and that he has not demonstrated prejudice.

17       Martin also challenges the conditions of his confinement under 28 U.S.C. § 2241,
18 claiming he has received inadequate medical care due to his jailors' deliberate indifference. The
19 government argues both that Martin should bring his claim in a civil rights action, rather than
20 one seeking habeas corpus, and that he regardless has not exhausted his administrative remedies
21 as required under the Prison Litigation Reform Act. Finally, he asks the Court to reconsider his
22 sentence given his age (56 years) and infirmities.

23
24

# DISCUSSION

## I. Standard of Review.

A prisoner in custody for a federal law violation may seek the right to release under four circumstances: where (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "the court was without jurisdiction to impose such sentence"; (3) "the sentence was in excess of the maximum authorized by law"; or (4) the sentence is otherwise "subject to collateral attack." 28 U.S.C. § 2255(a). The Court need not hold an evidentiary hearing on a § 2255 motion where the claims "can be conclusively decided on the basis of documentary testimony and evidence in the record." *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir. 1988) (quoting *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988)). There is no need for an evidentiary hearing given the nature of Martin's claims and the considerable evidence in the record.

## B. Martin's §2255 Claim Fails Because He Received Effective Assistance of Counsel.

Martin argues that Sullivan deceived him into signing his plea agreement and did not adequately advocate for him at sentencing. He also seeks relief because Sullivan did not object to the government's alleged late delivery of his presentencing report. The government counters that Martin's allegations have no merit, that Sullivan was effective, and that he did not demonstrate any prejudice.

To succeed on an ineffective assistance of counsel claim, Martin must satisfy a two-part test: he must show that (1) "counsel's representation fell below an objective standard of reasonableness"; and (2) that counsel's deficient representation "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to show either deficient

1  performance or prejudice is alone sufficient to dispose of a claim for ineffective assistance of
2  counsel. *See id.* at 697. No particular set of detailed rules for counsel's conduct can satisfactorily
3  take account of the variety of circumstances faced by defense counsel or the range of legitimate
4  decisions regarding how best to represent a criminal defendant. *Id.* at 689. Given the
5  "tempt[ation] for a defendant to second-guess counsel's assistance after conviction," a court
6  must be highly deferential and resist using the benefit of hindsight to evaluate counsel's
7  decisions. *Id.* In order to establish the first prong of the *Strickland* test, Martin bears the burden
8  to "overcome the presumption that, under the circumstances, the challenged action 'might be
9  considered sound trial strategy.'" *Id.*

10     The second prong requires Martin to establish a "reasonable probability that, but for
11 counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at
12 694. A proponent cannot merely show that the error had "some conceivable effect on the
13 outcome of the proceeding," but rather must show a probability sufficiently great enough to
14 undermine confidence in the outcome. *See id.* When ineffective assistance leads a petitioner to
15 accept a plea bargain, he must allege that but for counsel's incompetent assistance, he would
16 either have gone to trial or received a better plea bargain. *See United States v. Howard*, 381 F.3d
17 873, 882 (9th Cir. 2004).

18     A guilty plea is valid if it represents a "voluntary and intelligent choice among the
19 alternative courses of action open to the defendant." *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985)
20 (quoting *Alford v. North Carolina*, 400 U.S. 25, 31 (1970)). The representations of the defendant,
21 his lawyer, and the prosecutor at a plea hearing "constitute a formidable barrier in any
22 subsequent collateral proceedings" because they "carry a strong presumption of verity."
23 *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). The subsequent presentation of conclusory
24

allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible. *Id.*

**1.    The Record Does Not Support Martin's Claims of a Prior Binding Plea Agreement.**

Martin's primary argument is that Sullivan ineffectively represented him at the plea bargaining stage. He alleges that he signed a binding plea agreement of 84 months that was eventually replaced by the plea agreement he signed recommending a non-binding 72–96 month range. He likens this to entrapment, arguing that had he kept his alleged original binding agreement, he would be eligible for a 75-month sentence following the stipulated two-level sentencing reduction. He challenges the government to produce the plea agreement he signed recommending a 72–96 month range and, if it cannot, claims he should be set free. If it can, Martin believes "there should be no evidentiary hearing."

An evidentiary hearing is not required because the signed plea agreement, cited by the government in its habeas pleadings, does show Martin agreed to a nonbinding 72–96 month sentencing range. Martin freely acknowledged this recommendation at his plea hearing, after confirming that he can read English and that he reviewed the deal. Sullivan informed the Court that she felt Martin understood the deal, and that he had time to review it in detention. There is no evidence Martin was ever offered or signed a binding, 84-month plea agreement. In fact, even if he had, he may not have been eligible for a sentencing reduction, given the binding nature of his alleged plea. *See, e.g.*, *United States v. Austin*, 676 F.3d 924, 930 (9th Cir. 2012).

The record shows Martin knowingly, intelligently, and voluntarily entered into his plea agreement, and his present unsupported contentions to the contrary will not override the ample evidence on the record. Accordingly, Martin's subsequent unsupported allegations fail to overcome both *Strickland*'s presumption of counsel effectiveness and the presumption of verity

given to his prior proceedings. Martin has also failed to demonstrate prejudice, because the alleged binding plea agreement could have resulted in a longer prison sentence than the one he is presently serving. Therefore, his petition on this basis is DENIED.

**2.  Sullivan Effectively Represented Martin's Interests Before and at Sentencing.**

In his first amended petition, Martin claims ineffective assistance of counsel by arguing both that Sullivan failed to effectively bargain for a reduced sentence and that she failed to present his health and age as sentencing mitigating factors. The record, however, clearly contradicts both of these claims. While Martin now believes he is entitled to a 75-month sentence, Sullivan advocated for a 60-month term, the lowest in the parties' stipulated sentencing range. Sullivan also specifically offered Martin's age and health as reasons for sentencing leniency both in his sentencing memorandum and at his hearing. Martin has not presented, and the record does not contain, any evidence that her advocacy was objectively unreasonable. Martin also has not offered any evidence demonstrating how he was prejudiced by Sullivan's allegedly ineffective assistance. Accordingly, his claim for relief on this point is DENIED.

**3.  Martin Did Not Suffer Prejudice Due to Allegedly Receiving His Presentencing Report Late.**

Martin additionally contends the government violated his due process rights by failing to deliver his presentencing report 35 days before his hearing, pursuant to federal rules. He alleges he received the report one week before sentencing, and therefore had insufficient time to prepare objections. He also believes Sullivan should have attacked and objected to factual allegations that were "invalidly made part of the record and considered for his sentence." The government contends these assertions are without factual support, are not included in Martin's sworn affidavit, and are nevertheless immaterial because Martin was not prejudiced.

DKT. ## 9 AND 31 - 7

1         A probation officer must conduct a presentence investigation and issue a report, which
2 the district court must consider in sentencing. *See* Fed. R. Crim. P. 32(c). At least 35 days prior
3 to sentencing, the report must be disclosed to the defendant and his attorney. *See* Fed. R. Crim.
4 P. 32(e). Any defendant who fails to object to the late delivery of his presentencing report waives
5 his right to challenge timely delivery on review. *See United States v. Workman,* 110 F.3d 915,
6 920 (2nd Cir.1997), *cert. denied,* 520 U.S. 1281 (1997). A defendant who waives this right can
7 still challenge his waiver on ineffective assistance of counsel grounds, provided he can satisfy
8 *Strickland*'s two-part test. *See id.*

9         Martin waived any objection about the timely delivery of his presentencing report.
10 Accordingly, he can only state an ineffective assistance claim. Because the record is not clear as
11 to whether the report arrived late, it is unknown whether any failure to object was
12 constitutionally unreasonable under *Strickland*'s first prong.

13         Regardless, even assuming Martin's allegations are true and Sullivan's failure to object
14 was unreasonable, Martin has not shown that late delivery prejudiced him. Despite the alleged
15 delay, Sullivan sent the probation office an objection letter roughly three weeks before Martin's
16 sentencing hearing requesting corrections and clarifications, which were made where
17 appropriate. *See* Dkt. #26-2, p.2. Sullivan also addressed the report both in writing and orally at
18 sentencing. Martin has also not stated what objections he would have made if allowed more time
19 to prepare, and even admits he does not know whether the report's late delivery had any impact
20 on his sentence. Therefore, it is clear that even assuming he satisfies *Strickland*'s first prong, he
21 has not established the requisite prejudice to sustain an ineffective assistance claim on these
22 grounds. Martin's claim that Sullivan failed to object to the report's alleged misinformation is

23

24

also clearly contradicted by the record, which shows some objections (and subsequent corrections) were made. Accordingly, his § 2255 petition on this basis is also DENIED.

**C.      Martin's Claim Alleging Inadequate Medical Care Must Be Brought Separately.**

Martin also seeks relief under 28 U.S.C. § 2241, claiming that his jailors violated his Eighth Amendment rights by acting with a deliberate indifference to his medical needs. Martin particularly contends that if he were to undergo surgery for his allegedly immobilizing neck injury, the Bureau of Prisons would not be able to adequately provide post-treatment rehabilitative physical therapy. He also claims to have back injuries and an asthma condition that cause him substantial pain.

The government argues that neither a § 2241 or § 2255 habeas petition is the appropriate route for challenging inadequate medical care. Instead, it argues that Martin should bring a civil rights suit, and that he has thus far failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. *See* Dkt. #20, p.3.

Martin responds that he has received a final determination regarding the treatment that will be provided to him, which he believes is inadequate because it lacks physical therapy. *See* Dkt. #23-1, p. 18.

Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the "legality or duration" of confinement. *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991). A civil rights action, in contrast, is the proper method of challenging "conditions of ... confinement." *Id.* A prisoner's claim of inadequate medical care is properly brought under *Bivens* rather than under § 2241. *See Shook v. Apker*, 472 Fed. Appx. 702 (9th Cir. 2012). Because courts have a duty to construe pro se pleadings liberally, when a pro se habeas corpus petition may be fairly read to state a claim under the Civil Rights Act, it must be so construed. *See McDonald v. Bates*, 23 Fed.

Appx. 828 (9th Cir. 2001). Federal prisoners suing under *Bivens* must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). Failure to exhaust is an affirmative defense under the PLRA, and inmates are not required to specially plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

This case is akin to *Crumpton v. Fox*, in which an inmate brought a Section 2241 action alleging inadequate medical care by the Bureau of Prisons. *See generally Crumpton v. Fox*, No. CV 14-2460 JAK AJW, 2014 WL 4829054 (C.D. Cal. Sept. 26, 2014). The court dismissed the inmate's habeas petition without prejudice because it challenged the conditions—rather than the fact or duration—of his confinement. *See id.* at *2. The court declined to exercise its discretion to convert the habeas petition because he had failed to satisfy the filing fee requirements for bringing a civil rights complaint, and the record was unclear as to whether he exhausted his administrative remedies. *See id.* Because the court dismissed his claim without prejudice, the inmate could still bring a separate civil rights action on his claims. *See id.*

It is unclear whether Martin exhausted his administrative remedies, and he has not pleaded sufficient information about his infirmities—and his jailors' indifference—to determine whether he has a meritorious *Bivens* claim. Like in *Crumpton*, this Court declines to convert Martin's habeas petition into one asserting a claim under *Bivens*. Accordingly, Martin's habeas pleading with respect to the conditions of his confinement is DISMISSED WITHOUT PREJUDICE. Martin may bring a separate civil rights action on these claims.

**D.     The Court Will Not Reevaluate Martin's Sentence.**

Finally, Martin asks this Court to "correct procedural errors in his sentence" based on the court's discretion in applying age and health downward variances at sentencing. The

government argues there is no reason to revisit those decisions, and that § 2255 "is not a remedy for every so-called error." [Dkt. #24, p. 14, 28.]

By the terms of Martin's plea agreement, because his sentence is within sentencing guidelines, he is barred from appealing or bringing a collateral attack to his sentence except as it may relate to effectiveness of legal representation. This Court therefore rejects his claim for sentence reconsideration pursuant to his plea agreement. Notwithstanding the agreement, the Court rejects Martin's notion that there were any "procedural errors" in the length of his sentence that was individually considered and within the range agreed to by both parties.

## CONCLUSION

Martin's petition for Writ of Habeas Corpus is DENIED. Because Martin has failed to make "a substantial showing of the denial of a constitutional right," the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. §2253(c)(2). Martin's claim challenging inadequate medical care is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated this 11th day of February, 2016.

Ronald B. Leighton
United States District Judge